IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL ROSADO ) | |
| ) | Case No. 17 C 02210 |
| Plaintiff, ) | |
| ) | JUDGE LEFKOW |
| vs. ) | |
| ) | Magistrate Judge Kim |
| CITY OF CHICAGO, OFFICER ABRAHAM ) | |
| MORA, OFFICER PAUL HEYDEN, OFFICER ) | |
| VINCENT BALDASSANO, OFFICER DELCID, ) | |
| OFFICER APACIBLE, and OFFICER ) | |
| KORHONEN ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' JOINT RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, City of Chicago, and Defendant Officers Abraham Mora, Paul Heyden II, Roberto Delcid, Jonathan Apacible and Scott Korhonen, (collectively "Defendants"), by and through their undersigned attorneys, for their Local Rule 56.1(a)(3) Joint Statement of Undisputed Material Facts in support of their Motion for Summary Judgment, state as follows[1]:

**JURISDICTION AND VENUE**

1. Plaintiff Angel Rosado ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983 and Illinois law. *See* Plaintiff's First Amended Complaint. (Dkt. No. 43), attached hereto as Exhibit A at ¶ 1. The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 & 1343. Ex. A at ¶ 2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Ex. A at ¶ 3.

---

[1] Defendants assert that these facts are undisputed only for the purpose of their motion for summary judgment. Defendants reserve the right to contest said facts at trial. Nothing in this Statement of Facts should be construed as an admission for use at trial.

1

2. On January 31, 2018, Plaintiff filed an his First Amended Complaint ("Complaint") against the City of Chicago ("Defendant City") and Officers Abraham Mora, Paul Heyden II, Roberto Delcid, Jonathan Apacible, Scott Korhonen, (collectively "Defendant Officers") and Vincent Baldassano alleging mainly that the Defendant Officers arrested Plaintiff "without reasonable suspicion or probable cause" on September 1, 2015, and subsequently illegally searched and detained Plaintiff, and caused him to be maliciously prosecuted. Ex. A at ¶¶ 7-66.[2]

## PARTIES AND WITNESSES

3. On September 1, 2015, Defendant Officer Abraham Mora ("Officer Mora") was employed by the Chicago Police Department as a Chicago Police Officer. At all times relevant to Plaintiff's Complaint, Officer Mora was acting in his official capacity within the scope of his employment and under color of law. Ex. A at ¶ 5.

4. On September 1, 2015, Defendant Officer Jonathan Apacible ("Officer Apacible") was employed by the Chicago Police Department as a Chicago Police Officer. At all times relevant to Plaintiff's Complaint, Officer Apacible was acting in his official capacity within the scope of his employment and under color of law. Ex. A at ¶ 5.

5. On September 1, 2015, Defendant Officer Scott Korhonen ("Officer Korhonen") was employed by the Chicago Police Department as a Chicago Police Officer. At all times relevant to Plaintiff's Complaint, Officer Korhonen was acting in his official capacity within the scope of his employment and under color of law. Ex. A at ¶ 5.

6. On September 1, 2015, Defendant Officer Roberto Delcid ("Officer Delcid") was employed by the Chicago Police Department as a Chicago Police Officer. At all times relevant to

---

[2] Officer Vincent Baldassano was dismissed from this lawsuit. (ECF No. 78). Officer Abraham Mora and Jonathan Apacible were dismissed from Count III. (ECF No. 78). Furthermore, this Court dismissed Counts VII and VIII of Plaintiff's First Amended Complaint. (ECF No. 70).

Plaintiff's Complaint, Officer Delcid was acting in his official capacity within the scope of his employment and under color of law. Ex. A at ¶ 5.

7. On September 1, 2015, Defendant Officer Paul Heyden II ("Officer Heyden") was employed by the Chicago Police Department as a Chicago Police Officer. At all times relevant to Plaintiff's Complaint, Officer Hedyen was acting in his official capacity within the scope of his employment and under color of law. Ex. A at ¶ 5.

8. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois and was the employer and principal of the Defendant Officers. Ex. A at ¶ 6.

9. Plaintiff is a resident of the Northern District of Illinois. Ex. A at ¶ 4.

10. On September 1, 2015, Defendant Officers, as well as Officer Vincent Baldassano ("Officer Baldassano"), were working together as part of a gang investigations unit. Transcript of Officer Mora, attached hereto as Ex. B at 19:21-21:1; Transcript of Officer Baldassano, attached hereto as Ex. C at 23:21-24:6; Transcript of Officer Korhonen, attached hereto as Ex. D at 11:16-20, 15:17-20; Transcript of Officer Delcid, attached hereto as Ex. E at 4:8-11, 13:10-15; Transcript of Officer Heyden, attached hereto as Ex. F at 23:10-17; Transcript of Officer Apacible, attached hereto as Ex. G at 20:10-21:10.

11. On September 1, 2015, Officers Mora, Apacible and Baldassano were part of the surveillance team, and Officers Korhonen, Delcid, and Heyden were working enforcement. Ex. F at 41:10-22; Ex. E at 24:4-7, 25:12-19; Ex. G at 41:10-16; Ex. B at 77:6-9; Ex. D at 33:3-5; Ex. C at 59:9-14.

## INITIAL SURVEILLANCE OF PLAINTIFF

12. On September 1, 2015, Officer Mora communicated to Officer Apacible, Officer Baldassano, Officer Korhonen, Officer Delcid and Officer Heyden, that he was going to conduct surveillance in the area of Diversey and Monticello, an area known for gang and narcotic activity. Ex. B at 58:23-59:3, 60:12-18; Ex. F at 39:23-40:5.

13. The surveillance team -- Officers Mora, Baldassano and Apacible -- were alone, each in a separate covert vehicle. Ex. B at 59:4-9, 78:20-23; Ex. G at 44:3-6, 54:12-17; Ex. C at 57:11-20, 45:7-9, 45:25-46:8.

14. The enforcement team -- Officers Korhonen, Delcid and Heyden -- were together in an unmarked squad car. Officer Korhonen was driving, Officer Delcid was in the front passenger seat, and Officer Heyden was in the rear seat behind Officer Korhonen. Ex. D at 33:3-5; Ex. F at 41:16-22, 44:1-7; Ex. E at 24:4-7.

15. While conducting surveillance in the area of Diversey and Monticello, Officer Mora observed a Hispanic male, later learned to be Plaintiff, engage in a hand-to-hand transaction with another unknown male. Ex. B at 61:13-18; *see also* Transcript of Cook County Jail Call, attached hereto as Ex. H at 7:19-23, 11:18, 12:24-13:2, 13:14-15; Cook County Jail Call, attached hereto as Ex. I at 7:06, 12:55, 14:28, 15:28; Transcript of Illinois Department of Correction Call September 19, 2015, attached hereto as Ex. J at 8:1-12, 15:3-9; Illinois Department of Correction Call September 19, 2015, attached hereto as Ex. K at 8:32, 17:20; Illinois Department of Correction Call September 26, 2015, attached hereto as Ex. L at 5:55, 7:03; Illinois Department of Correction Call October 10, 2015, attached hereto as Ex. M at 16:40, 16:47; Request to

Admit, attached hereto as Ex. N at ¶¶ 11, 17[3]; *see also* Deposition of Plaintiff, Angel Rosado, attached hereto as Ex. O at 17:9-16.

16. Officer Mora then observed Plaintiff walk to the drivers' side door of a white van, and conceal an item which appeared to be a golf ball sized object, in his right pants pocket. Ex. B at 61:19-22; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28; Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, ¶14, 15-16, 20, 23[4]; *see also* Transcript from *People v. Rosado*, 15-CR-15688-01, attached hereto as Ex. U at 23:3-9; Ex. O at 17:23-18:2.

17. Based on his training and experience, and the fact that the area of Diversey and Monticello was an area known for gang and narcotic activity, Officer Mora believed he observed Plaintiff engage in a narcotic transaction. Ex. B at 35:12-22, 60:12-18, 65:22-25.

18. Plaintiff then got into the front drivers' seat of the white van and drove away. Ex. B at 62:4-7; Ex. O 17:12-19:7; Ex. U at 22:21-23.

19. Officers Korhonen, Delcid, Apacible and Heyden did not personally observe the hand-to-hand transaction viewed by Officer Mora. Ex. F 64:16-19, Ex. G at 52:12-15, *see also* Ex. D at 62:13-19, Ex. E at 31:14-16.

20. Officer Mora related over a push-to-talk radio to Officers Baldassano, Apacible, Korhonen, Delcid and Heyden that he observed a hand-to-hand transaction, which he believed to be a narcotics transaction, a description of the suspect individuals in the vehicle, including that one of them had concealed a golf-ball sized object in his right pants pocket, believed to be narcotics, as well as a description of the white van Plaintiff was driving and a license plate

---
[3] Request to Admit No. 17 was deemed admitted by this Court's October 25, 2018 Order. (ECF No. 75)
[4] Request to Admit No. 14, 15-16 and 23 were deemed admitted by this Court's October 25, 2018 Order. (ECF No. 75).

number. Officer Mora further communicated that he would be conducting mobile surveillance of the van. Ex. B at 64:14-21; 65:19-25; 114:11-16; Ex. C at 54:23-55:1, 55:24-56:10, 56:15-57:10; Ex. D at 60:6-23; Ex. E at 25:8-26:4; Ex. F at 43:22-11, 46:5-17; Ex. G at 39:2-7; *see also* Declaration of Officer Korhonen, attached hereto as Ex. P at ¶¶5-8; Declaration of Officer Heyden, attached hereto as Ex. Q at ¶¶5-8, Declaration of Officer Delcid, attached hereto as Ex. R at ¶¶5-8; Ex. U at 16:22-17:4, 23:10-12, 23:19-24:5, 28:4-10, 35:1-9.

21. While conducting surveillance of the white van driven by Plaintiff, Officer Mora also relayed various locations of the white van to Officers Baldassano, Apacible, Korhonen, Delcid and Heyden, including locations on the expressway. Ex. B at 65:19-25, 75:25-76:19, 114:11-16; Ex. C at 54:23-55:1, 55:24-56:10, 56:15-57:10; Ex. D at 60:6-23; Ex. E at 25:8-26:4, 64:6-8; Ex. F at 43:22-44:11, 44:20-45:2, 46:5-17; Ex. G at 39:2-7; Ex. P at ¶¶5-8; Ex. Q at ¶¶5-8, Ex. R at ¶¶5-8; Ex. U at 25:5-7, 28:4-10, 35:16-18; Ex. O at 17:12-19:7.

22. In addition, based on the information relayed by Officer Mora, Officer Apacible at various points conducted mobile surveillance of the white van driven by Plaintiff, and relayed those locations to Officers Mora, Baldassano, Korhonen, Delcid and Heyden, including locations on the expressway. Ex. G at 38:10-39:1, 40:9-18; Ex. U at 35:16-18; Exh. O at 17:12-19:7.

23. After a period of mobile surveillance, Officer Apacible observed Plaintiff stop the white van at 47th/S. Wallace, Chicago.[5] Officer Apacible conveyed this final location to the enforcement officers, Korhonen, Delcid and Heyden, over the push-to-talk radio. Ex. G at 42:25-43:15; Exh. O at. 17:12-19:7.

---

[5] Plaintiff gives the address of 601 W. 47th St., Chicago. However, this address is located at the same cross street as 4710 S. Wallace, which is the address given by the Defendant Officers. Both addresses involve the cross section of 47th/S. Wallace. The Court may take judicial notice of this fact. Fed. R. Evid. 201(b); *see also U.S. v. Mendell*, 447 F.2d 639 (7th Cir. 1971).

24. Although at times Officers Mora and Apacible lost sight of the van driven by Plaintiff while conducting surveillance, the surveillance team was able to maintain surveillance of the van driven by Plaintiff the entire time, until it reached 47th/S. Wallace, Chicago. Ex. B at 76:24-77:5, 114:7-10; Ex. G at 41:5-13, 78:1-8; Ex. U at 18:22-23.

## PLAINTIFF'S ARREST

25. Officers Korhonen, Delcid, and Heyden had no reason to doubt the credibility of the information related to them by Officer Mora over the push-to-talk radio regarding his observations of Plaintiff. Ex. P at ¶¶ 5-9; Ex. Q at ¶¶ 5-9, Ex. R at ¶¶ 5-9.

26. Based on their training and experience and the information relayed to them from Officer Mora, Officers Korhonen, Delcid and Heyden understood that Officer Mora observed Plaintiff in an illegal narcotic transaction. Ex. P at ¶¶ 6-7; Ex. Q at ¶¶ 6-7, Ex. R at ¶¶ 6-7.

27. Officers Korhonen, Delcid and Heyden relied on the information conveyed to them by Officer Mora over the push-to-talk radio regarding his observations of Plaintiff in the initial stop and detention of Plaintiff. Ex. P at ¶ 10; Ex. Q at ¶¶ 10-12, Ex. R at ¶ 10.

28. After parking the white van at 4710 S. Wallace, Plaintiff exited the driver's side of the white van, opened both sliding doors to the passenger portion of the van, and moved to the drivers' side rear of the vehicle, to retrieve certain items from inside the van. Ex. O at 19:9-19, 20:1-10.

29. Enforcement Officers then pulled their vehicle behind the white van, and Officers Korhonen, Delcid and Heyden exited the vehicle. *See* Ex. D at 47:10-19; Ex. F at 48:18-22, 49:20-50:2; Ex. U at 29:24-30:6.

30. Officer Heyden approached Plaintiff to conduct an investigatory stop, in order to investigate the observations of Officer Mora. Ex. F at 64:20-3.

31. At the time Officer Heyden began to initially approach Plaintiff, Plaintiff's hands were in the van, not visible to Officer Heyden; as a result, for officer safety, Officer Heyden drew his weapon and ordered Plaintiff to show his hands. Plaintiff immediately complied, and Officer Heyden re-holstered his weapon. Ex. F at 48:18-25, 50:13-15; Ex. O at 19:9-19, 20:1-10.

32. Officers Delcid and Korhonen approached the passenger side of the van, where Plaintiff's brother, Alexander Soliveras, was located. Ex. D at 47:14-19.

33. As Officer Heyden approached Plaintiff, he observed a portion of a white plastic bag hanging out of Plaintiff's front right pocket, which he believed to be suspected illegal narcotics. Ex. F at 48:18-49:2; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23; Ex. U at 31:3-9, 32:5-8, 36:20-37:13.

34. Officer Heyden handcuffed Plaintiff, and performed a protective pat down on Plaintiff. Ex. F at 51:1-19.

35. Plaintiff admitted to Officer Heyden that he had some cocaine on him for personal use. Ex. F at 48:18-49:9, 51:7-19. Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23; Ex. U at 32:23-33:3.

36. Officer Heyden recovered approximately one ounce of suspected cocaine from Plaintiff's right pants pocket, as well as a small amount of suspected cannabis. At this time, Plaintiff was under arrest. Ex. F at 52:14-25, 53:19-54:7, 64:20-65:3, 74:19-75:3; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-

4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23.

37. Officer Heyden relayed to Officers Korhonen and Delcid that he recovered suspected cocaine and cannabis from Plaintiff's person. Ex. R at ¶ 11; Ex. P at ¶ 11.

38. Officer Korhonen and Delcid had no reason to doubt the credibility of the information related to them from Officer Heyden. Ex. R at ¶ 12; Ex. P at ¶ 12.

39. Officers Heyden, Korhonen and Delcid then conducted a search of the white van. Ex. D at 53:8-21; Ex. F at 60:5-11, 62:16-63:3, Ex. P at ¶ 13; Ex. R at ¶ 13.

40. Officer Korhonen and Delcid relied on the information provided by Officer Mora and Officer Heyden in searching the white van. Based on the drugs found on Plaintiff's person, as well as information provided by Officer Mora, Officer Heyden searched the white van. Ex. P at ¶ 13. Ex. R at ¶ 13; Ex. Q at ¶ 12; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23.

41. At some point, Officer Heyden relayed to Officers Mora and Apacible that he recovered cocaine and cannabis from Plaintiff's person. *See* Affidavit of Officer Apacible, attached hereto as Ex. S at ¶11; Affidavit of Officer Mora, attached hereto as Exh. T at ¶ 11.

42. Officers Apacible and Mora had no reason to doubt the credibility of the information relayed to them by Officer Heyden regarding the narcotics found on Plaintiff's person. Ex. S at ¶ 12; Ex. T at ¶12.

43. Officers Mora and Apacible were not present for Plaintiff's arrest, did not observe Plaintiff's arrest, and did not physically arrest the Plaintiff on September 1, 2015. Ex. S at ¶¶ 5, 8; Ex. T at ¶¶ 5, 8.

44. After a search of the van was conducted, Plaintiff was transported to Homan Square for processing. Ex. F at 66:24-67:4, 70:10-14, 70:18-23; Ex. G at 55:15-21; Ex. B at 87: 6-15; Ex. O at 29:15-30:10.

45. While being processed, Plaintiff related to Officers Mora and Apacible his affiliation with the Insane Orchestra Albany Gang, that he worked for a Vietnamese restaurant, and that he was supplementing his income by selling drugs. Ex. B at 73:1-7; Ex. O at 12:13-13:1, 31:16-21; *see also* Deposition of Evie Rosado, attached hereto as Exhibit V, at 12:17-13:1; Ex. G at 58:3-11; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23.

46. The narcotics recovered from Plaintiff by Officer Heyden on September 1, 2015 were kept in the possession of Officer Heyden until he handed the drugs to Officer Apacible at Homan Square, at which time they were inventoried under Inventory No. 13520388 and 13520377, and later sent to the Illinois State Police for testing. Ex. G at 59:6-16; Ex. F at 66:24-67:11, 88:7-10; Ex. B at 102:7-15; Ex. S at ¶ 14, Inventories, attached thereto as Ex. 1 to Ex. S; *see* Declaration of Pat Junious-Hawkins attached hereto as Ex. W; Illinois State Police Laboratory Reports, attached thereto as Ex. A to Ex. W and also attached hereto as Ex. X.

47. Based on tests conducted by the Illinois State Police, the substance inventoried under number 13520377 tested positive for cocaine. Ex. W, and Ex. A to Ex. W, Ex. X.

48. Based on tests conducted by the Illinois State Police, the substance inventoried under number 13520388 tested positive for Cannabis. Ex. W, and Ex. A to Ex. W, Ex. X.

49. Based the information relayed by Officer Heyden, Officer Mora signed complaints against Plaintiff for Unlawful Possession of a Controlled Substance - Cocaine, and Unlawful Possession of Cannabis. Ex. B at 99:11-100:17; Ex. T at ¶¶ 11-13.

## Criminal Proceedings in *People v. Rosado*, 15 CR 155688-01

50. Plaintiff was subsequently indicted by grand jury for Possession of a Controlled Substance with Intent to Deliver- Cocaine, and Possession of a Controlled Substance- Cocaine, in *People v. Angel Rosado*, 15 CR 155688-01. *See* Grand Jury Indictment, attached hereto as Ex. AA[6].

51. On January 21, 2016, Plaintiff, through his attorney, filed a Motion to Quash Arrest and Suppress Evidence, seeking to suppress "any evidence which was recovered from the petitioner," as well as any testimony "relating to the items described above," and finally, the "statements made by petitioner to Chicago Police Officers regarding the narcotics recovered from the petitioner." *See* Motion to Quash, attached hereto as Ex. CC.

52. On May 12, 2016, after a hearing on Plaintiff's Motion to Quash Arrest and Suppress Evidence, the Court granted Plaintiff's motion to quash his arrest. Ex. U at 44:1-2.

53. In granting the motion the Court held that Officer Heyden's viewing of the plastic he believed to be dope occurred after the seizure of Plaintiff, so plain view did not apply. Ex. U at 42:7-9.

54. The Court also held that Officer Mora's observations of the hand-to-hand transaction with the golf-ball sized object did not rise to reasonable suspicion. Ex. U at 42:15-43:16.

---

[6] This court is permitted to take judicial notice of other judicial proceeds, including the record in another case. Fed. R. Evid. 201; *People v. Goodman*, 2013 Ill. App. (1st) 110510-U (1st Dist. Sept. 12, 2013).

55. After the motion hearing, on June 9, 2016 the Cook County State's Attorney's Office dismissed Plaintiff's criminal case *nolle prosequi*. *See* Certified Statement of Conviction for *People v. Angel Rosado*, 15-CR-155688-01, attached hereto as Ex. Z.

56. Plaintiff's criminal case was dismissed *nolle prosequi*, because after the Court granted Plaintiff's motion to quash, the State would not have been able to use the admissions made by Plaintiff, the drugs recovered from Plaintiff, or any testimony regarding the drugs against Plaintiff at trial, as well as no grounds to appeal the court's ruling on the motion to suppress. *See* Transcript of William Hall attached hereto as Ex. DD at 44:8-45:8.

57. Officer Korhonen did not sign any criminal complaints against Plaintiff, did not testify in any criminal proceedings against Plaintiff, and did not author any reports in connection with Plaintiff's September 1, 2015 arrest, other than clerking complaints. Ex. D at 44:11-14; Ex. P at ¶¶ 17-19.

58. Clerking a criminal complaint does not require personal knowledge of the information contained in the complaint, and is simply a witness to the complainant signing the court complaint. *See* Declaration of Robert Flores, attached hereto as Ex. FF.

59. Officer Delcid did not sign criminal complaints against Plaintiff, did not testify in any criminal proceedings against Plaintiff, and did not author any reports in connection with Plaintiff's September 1, 2015 arrest. Ex. G at 37:1-11; Ex. R at ¶¶ 16-18.

60. Officer Apacible did not sign criminal complaints against Plaintiff, did not testify in any criminal proceedings against Plaintiff, and other than completing inventories, Officer Apacible did not author any reports in connection with Plaintiff's September 1, 2015 arrest. Ex. S at ¶¶ 15-17.

61. The Defendant Officers did not conspire to deprive Plaintiff of his due process rights, did not conspire to maliciously prosecute him, and did not conspire to otherwise violate Plaintiff's constitutional rights. Ex.P at ¶¶ 2-4 , Ex. Q at ¶¶ 2-4, Ex. R at ¶¶ 2-4, Ex. S at ¶¶ 2-4, Ex. T at ¶¶ 2-4; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15 ; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23.

62. The Defendant Officers did not act with malice or reckless disregard to Plaintiff's rights. Ex.P at ¶ 20; Ex. Q at ¶ 13; Ex. R at ¶ 19; Ex. S at ¶ 18; Ex. T at ¶ 14; Ex. H at 6:16-25, 7:19-23, 11:18, 12:24-13:2; 13:14-15; Ex. I at 5:25, 7:06, 12:55, 14:28, 15:28, Ex. J at 3:24-4:6; 8:1-12, 8:14-19, 15:3-9, 22:24-23:3; Ex. K at 2:25, 8:32, 9:05, 17:20, 25:27; Ex. L at 5:55, 7:03; Ex. M at 16:40, 16:47; Ex. N at ¶¶ 11, 14, 15-16, 20, 23.

**Plaintiff's Parole**

63. At the time of Plaintiff's arrest on September 1, 2015, Plaintiff was on parole for his conviction for murder in his Cook County Criminal case *People v. Angel Rosado*, 95 CR 20806-03. *See* Certified Statement of Conviction for *People v. Angel Rosado*, 95-CR-20806-03, attached hereto as Ex. Y; Ex. N at ¶ 34.

64. Plaintiff was charged with violating his parole *in People v. Angel Rosado*, 95-CR-20806-03, for: (i) violation of any criminal statute; (ii) use or possession of narcotics or other controlled substances in any form, or any paraphernalia related to those substances, or failure to submit to a urinalysis test as instructed; and (iii) being in places where controlled substances are illegal sold, used, distributed or administered. *See* Affidavit of Shunique Joiner, attached hereto as Ex. BB at ¶¶ 4-7; Ex. A to Ex. BB, pp. 1, 4.

13

65. After a hearing conducted by the Illinois Prisoner Review Board, the Illinois Prisoner Review Board found probable cause for all 3 charged violations. Ex. BB at ¶ 8; Ex. A to Ex. BB, p. 1.

### Plaintiff's Admissions[7]

66. Plaintiff's voice can be heard on Plaintiff's jail call with his wife, Evie Rosado, on September 2, 2015, while incarcerated with the Cook County Department of Corrections. Ex. I; Ex. N at ¶¶ 10-12.

67. In the September 2, 2015 jail call, Plaintiff states, "I'm one of the ones who got hit the hardest…And the thing is, even though it's a lot of, it's a lot if… they're saying it's 28 or 29 grams, its only possession, you know what I mean?..." Ex. H at 6:18-21; Ex. I at 5:25; Ex. N at ¶ 14.

68. In the September 2, 2015 jail call, when Evie Rosado, his wife, stated that Plaintiff's brother, Alexander Soliveras, stated he told the police the drugs were his, Angel Rosado responded with, "No he didn't. He didn't tell them that." Ex. N at ¶¶ 15,16; Ex. H at 10:19-11:2; Ex. I at 11:34.

69. In the September 2, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest, Plaintiff states, "you know when you tell my mom, tell her, you know I told him not to do this, he was trying to make extra money." Ex. H at 12:24-13:2; Ex. I at 14:28; Ex. N at ¶ 17.

70. In the September 2, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest, Plaintiff states, "If these motherfuckers don't come through for me . . . it's I'm over it, it's over with. I'm done with that shit." Ex. H at 7:19-23; Ex. I at 7:06.

---

[7] This Court deemed admitted certain facts in Defendants' Requests to Admit in its October 25, 2018 Order. (ECF No. 75).

71. In the September 2, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest, Plaintiff states, "You didn't do nothing, it was me, babe." Ex. H at 11:14-18; Ex. I at 12:55.

72. In the September 2, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest, in response to his wife, Evie Rosado, saying "I think somebody rat you out," Plaintiff replied "No they did, I know for a fact. I think I know who it was too." Ex. H at 9:12-14; Ex. I at 9:32.

73. Plaintiff's voice can be heard on Plaintiff's jail call with his wife on September 19, 2015, while incarcerated with the Illinois Department of Corrections. Ex. K; Ex. N at ¶¶ 20, 21.

74. In the September 19, 2015 jail call, when discussing obtaining video footage from the scene of Plaintiff's September 1, 2015 arrest, Plaintiff states, "I need you to look at it first to make sure there's no incrim . . . nothing incriminating, you know what I mean, on there." Ex. N at ¶¶ 22, 23; Ex. J at 8:14-19; Ex. K at 9:05.

75. In the September 19, 2015 jail call, when discussing with his wife, Evie Rosado, the preliminary hearing in Plaintiff's underlying criminal matter, Plaintiff states " . . . it doesn't really make a difference at this juncture because if they find probable cause Wednesday, I'm stuck in this motherfucker . . . ," to which his wife replies " . . . how --- how do we get the probable cause to not be probable cause?" Plaintiff then replies "Shit, they have to drop it. I don't know." Ex. J at 8:1-10; Ex. K at 8:32.

76. In the September 19, 2015 jail call, when discussing Plaintiff's possible imprisonment as a result of his September 1, 2015 arrest, Plaintiff states, "I'm not going to let you put yourself at more of an inconvenience because I fucked up . . . Well I did fuck up." Ex. J at 15:3-9; Ex. K at 17:20.

77. Plaintiff's voice can be heard on Plaintiff's jail call with his wife and his, brother, Alexander Soliveras, on September 26, 2015 while incarcerated with the Illinois Department of Corrections. The same male voice Plaintiff identifies as his own in Exhibits I and K, is heard in Exhibit L. Ex. L; *see also* Transcript of Alexander Soliveras, attached hereto as Ex. EE at 94:14-95:18.

78. In the September 26, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest with his brother, Alexander Soliveras, Plaintiff states, "Motherfuckers, you know motherfuckers sick those police on me like that. It had to be somebody watching or somebody that was at the crib. You know what I mean?" Ex. L at 7:03.

79. Plaintiff's voice can be heard on Plaintiff's jail call with his wife and another male named Orlando, on October 10, 2015, while incarcerated with the Illinois Department of Corrections. The same male voice Plaintiff identifies as his own in Exhibits I and K is heard in Exhibit M. Ex. M.

80. In the October 10, 2015 jail call, when discussing Plaintiff's September 1, 2015 arrest, Plaintiff states, "Little, little bro tried to help me out, but fucking puss ass cops . . . My little brother, he tried to help me out on that day, but the fucking police is on some bullshit, bitch asses." Ex. M at 16:47.

January 11, 2019

Respectfully submitted,

By: */s/ Allison L. Romelfanger*
Allison L. Romelfanger
Assistant Corporation Counsel III
Attorney No. 6310033

By: */s/ Dortricia Penn*
Dortricia Penn
Assistant Corporation Counsel III
Attorney No. 6275679

By: */s/ Julie Murphy*
Julie Murphy
Assistant Corporation Counsel Supervisor
Attorney No. 6290303

City of Chicago, Dept. of Law
30 N. LaSalle, Suite 900
Chicago, Illinois 60602
Tel: (312) 744-5890 (Attorney Romelfanger)
Fax: (312) 744-6566
Allison.romelfanger@cityofchicago.org
Dortricia.penn@cityofchicago.org
Julie.murphy@cityofchicago.org
*Attorneys for Defendants*

# **CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing with the United States District Court, Northern District of Illinois', ECF filing system on this 11th day of January, 2019, thereby causing a copy of the foregoing to be served upon all counsel of record.

*/s/ Allison L. Romelfanger*
Allison L. Romelfanger
Assistant Corporation Counsel III