IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGEL ROSADO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17 C 2210 |
| OFFICER ABRAHAM MORA, OFFICER PAUL HEYDEN, OFFICER ROBERTO DELCID, OFFICER JONATHAN APACIBLE, OFFICER SCOTT KORHONEN, and THE CITY OF CHICAGO, a municipal corporation, | ) Judge Joan H. Lefkow ) ) ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Angel Rosado has sued the defendant Chicago police officers and the City of Chicago under 42 U.S.C. § 1983 and several state law theories in connection with his 2015 arrest for drug possession and ensuing prosecution. After the court dismissed several counts of the complaint (dkt. 70), the following counts remain:

I. § 1983 – Unreasonable seizure under the Fourth Amendment

II. § 1983 – Unreasonable pretrial detention under the Fourth Amendment

III. § 1983 – Unreasonable search under the Fourth Amendment

IV. § 1983 – Fabrication of evidence in violation of the Due Process Clause

V. Malicious prosecution under Illinois law

VI. Conspiracy to commit malicious prosecution

IX. Indemnity (against the city)

1

All defendants have moved for summary judgment. (Dkt. 85.) For the reasons below, their motion is granted in part and denied in part.[1]

# BACKGROUND[2]

**I. Surveillance**

On September 1, 2015, two teams of officers of the Chicago Police Department worked as part of a gang investigations unit. (Dkt. 110 ¶¶ 3–10.) Officers Abraham Mora, Jonathan Apacible, and Vincent Baldassano served as the surveillance team, patrolling different parts of Chicago in separate unmarked cars. (*Id.* ¶¶ 11, 13.) Officers Scott Korhonen, Roberto Delcid, and Paul Heyden served as the enforcement team, waiting together in an unmarked squad car to assist as needed. (*Id.* ¶¶ 11, 14.)[3]

Mora testified that he watched the corner of Diversey and Monticello, which he knew to be a frequent site of gang and drug activity. (Dkt. 86 ¶ 12.)[4] Mora says he observed a Hispanic man, who he later learned was plaintiff Angel Rosado, engage in a hand-to-hand transaction, conceal an object the size of a golf ball in his front right pants pocket, and enter the driver's seat

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Venue is appropriate under 28 U.S.C. § 1391(b).

[2] The court takes the facts in this section from the parties' Local Rule 56.1 statements and supporting documents and construes them in the light most favorable to Rosado. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion.

[3] All officers but Baldassano are defendants. (*See* dkt. 78 (dismissing Baldassano).)

[4] Rosado does not genuinely dispute that the corner was a high-crime area. Mora testified that he knew the corner's reputation from repeated visits over several years of police work. (Dkt. 89 at 56:10–18.)

2

of a white van. (*Id.* ¶¶ 15–16.) No other officers observed these events. (*Id.* ¶ 19.) Rosado denies that he participated in any hand-to-hand transaction. (Dkt. 110 ¶ 15.)

Mora radioed to all other officers in the unit that he had observed a suspected drug transaction. (Dkt. 86 ¶ 20.) Rosado concedes that the remaining officers heard and had no reason to doubt Mora's report. (*Id.* ¶ 25.) Mora described the suspect and the white van. (*Id.* ¶ 22.) Mora followed the van but lost sight of it by the time it reached the expressway. (*Id.* ¶ 24.) Apacible picked up the trail, following the van from the expressway until it reached its final destination in Rosado's driveway. (*Id.* ¶¶ 23–24.) He then called in the enforcement team. (*Id.* ¶ 24.)

## II. Stop, Search, and Arrest

The enforcement team arrived in front of Rosado's house. (*Id.* ¶ 29.) Rosado exited the driver's seat of the white van, then Heyden pointed his gun at Rosado, who immediately raised his hands in the air, prompting Heyden to re-holster his gun. (*Id.* ¶¶ 28, 31.) Video of the arrest shows that Heyden's gun was drawn for less than two seconds. (Dkt. 116-2 at 1:10–1:12.) Heyden then approached Rosado, gun holstered. (Dkt. 86 ¶ 33.) Korhonen and Delcid approached the van's passenger, Rosado's brother Alexander Soliveras.

Here, the parties' accounts of events diverge, and a security-footage video of the incident neither confirms nor forecloses either account. The defendants claim that Heyden approached Rosado and saw a clear plastic bag sticking out from Rosado's pocket. (*Id.* ¶ 33.) Heyden handcuffed Rosado, who announced that he had cocaine in his pocket. (*Id.* ¶¶ 34–35.) Heyden seized the bag, which later forensic testing would confirm contained cocaine and marijuana. (*Id.* ¶¶ 36, 46–48.) Heyden arrested Rosado and reported to all other officers that he found cocaine and marijuana on Rosado. (*Id.* ¶ 36–37, 41.) Heyden, Korhonen, and Delcid each searched Rosado's van. (*Id.* ¶ 39.) The three officers then transported Rosado to the police station, where

3

Rosado explained that he supplemented his income by selling drugs. (*Id.* ¶ 45.) The officers deny asking Rosado to become an informant. (Dkt. 124 ¶ 10.)

On Rosado's account, Heyden handcuffed and frisked Rosado and found nothing, because Rosado never possessed any illegal drugs. (Dkt. 110 ¶ 35.) Rather, Korhonen and Delcid seized cocaine and marijuana from Soliveras. (*Id.* ¶ 28.) But after the officers discovered that Rosado was on supervised release after a conviction for murder, they collectively decided that they could use Soliveras's drugs as leverage to pressure Rosado to become an informant. (Dkt. 116 ¶ 10–12.) The officers thus threatened to arrest Rosado on false drug charges unless he provided information about gang activity. (*Id.*) When Rosado refused (in part because he had no information to give), the officers arrested him and transported him to the police station. (*Id.* ¶ 11.) Mora and Apacible then demanded anew that he provide information, and Mora falsely charged him with drug possession when he refused again. (*Id.*)

A reasonable jury could accept Rosado's version of events at trial. The officers respond that Rosado's factual disputes are not genuine because he later confessed to possessing drugs. (*See* dkt. 87 at 21–22.) But viewing the evidence in the light most favorable to Rosado, as the court must, Rosado never confessed. Rosado denies admitting to possessing and dealing drugs on the night of the arrest. (Dkt. 110 ¶¶ 34, 44.) The officers cite Rosado's recorded statements to his wife from jail and prison, such as "You didn't do nothing, it was me, babe," "I did fuck up," "they did [rat me out], I know for a fact. I think I know who it was too," and "Motherfuckers, you know motherfuckers sic[] those police on me like that. It had to be somebody watching or somebody that was at the crib." (Dkt. 86 ¶¶ 71–72, 76, 78.) Reasonable jurors need not interpret these statements as confessions, though many might. At this stage, the court cannot reject Rosado's account simply because he made statements that some jurors might find inconsistent.

Similarly, although Soliveras made indisputably inconsistent statements about the provenance of the drugs, *compare* dkt. 96 at 19:7–11 ("Q: So you didn't know about the cocaine or the cann[abis]? . . . THE WITNESS: No."), *with id.* at 103:4–5 ("Look, the drugs were mine. . . ."), those inconsistencies speak to his credibility. Although the court is skeptical that a reasonable jury would find Soliveras credible, it cannot usurp the jury's function. *Payne* v. *Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations . . . .") (citations omitted).

### III.     Ensuing Legal Proceedings

Mora signed criminal complaints against Rosado for unlawful possession of cocaine and cannabis. (*Id.* ¶ 49.) A grand jury later indicted Rosado for possession with intent to deliver both substances. (*Id.* ¶ 50.) Rosado moved to quash his arrest and suppress all evidence collected from the scene. (*Id.* ¶ 51.) The Circuit Court of Cook County granted his motion, finding that (1) Mora's observations at Diversey & Monticello did not provide enough suspicion for Heyden to conduct a *Terry* stop; and (2) that Heyden did not see the plastic bag in plain view, instead finding it after he unreasonably seized Rosado. (*Id.* ¶¶ 52–54.) The Cook County State's Attorney declined to appeal the suppression order and dismissed the charges *nolle prosequi*. (*Id.* ¶ 55.)

Rosado also faced supervised release revocation proceedings following his arrest. At the time of his arrest, Rosado was on supervised release following a murder conviction. (*Id.* ¶ 63.) Rosado was charged with violating his release for (1) violating any criminal statute; (2) using or possessing drugs; and (3) being in places where drugs are illegally sold, used, or distributed. (*Id.* ¶ 64.) The Illinois Prisoner Review Board found probable cause for all three violations. (*Id.* ¶ 65.) Mora supplied information in support of the revocation charges. (Dkt. 116 ¶ 17.)

Eventually, the Board found no violation because "the state [did] not meet its burden of proof." (*Id.* ¶ 23.)

Rosado spent several months in custody awaiting trial and pending his supervised-release revocation hearing. (*Id.* ¶ 16; *see* dkt. 116-3 at 1 (noting Rosado was in Illinois Department of Corrections custody as of June 2016, nine months after arrest).)

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). To determine whether any genuine fact issue exists, the court must look beyond the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007).

## ANALYSIS

I.     **Stop, Frisk, and Vehicle Search (Counts I and III)**

The Fourth Amendment, effective against the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. U.S. Const. amd. IV, XIV. Ordinarily, a seizure, such as an arrest, is "'reasonable' only if based on probable cause to believe the individual has committed a crime." *Manuel* v. *City of Joliet*, 137 S. Ct. 911, 918, 197 L. Ed. 2d 312 (2017). "A police officer has probable cause to arrest a person if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in

6

believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez* v. *City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (quoting *Michigan* v. *DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627 (1979)).

Heyden's first interaction with Rosado was not a full-blown arrest but a *Terry* stop, a "brief investigative stop[]" considered reasonable under the Fourth Amendment "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette* v. *California*, 572 U.S. 393, 396, 134 S. Ct. 1683 (2014) (quoting *United States* v. *Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690 (1981)). The suspicion required to justify a *Terry* stop is less than probable cause but more than a hunch. *Id.* at 397. To determine whether an officer had a "reasonable suspicion" to support a *Terry* stop, courts must evaluate "both the content of information possessed by police and its degree of reliability" under "the totality of the circumstances . . . ." *Id.* at 397 (citations omitted).

Most important among those circumstances here, an officer may rely on information conveyed by another officer or agency, or "collective knowledge." "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer . . . even if the officer does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States* v. *Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States* v. *Hensley*, 469 U.S. 221, 232–33, 105 S. Ct. 675 (1985)). "In order for the collective knowledge doctrine to apply, (1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information . . . must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Id.* (citing *United States* v. *Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992)).

7

There is a genuine factual dispute about whether Mora observed Rosado transact illegal drugs. Rosado does not dispute that Heyden relied on information he received from Mora, satisfying the first element of the collective knowledge doctrine. (Dkt. 110 ¶ 26.) But as to the second, while Mora claims that he saw Rosado pocket a golf-ball-sized object after a hand-to-hand exchange on a street corner known to Mora for its drug trade, Rosado denies exchanging anything. Their disagreement is a quintessential credibility contest that juries, not judges decide. *Payne*, 337 F.3d at 770. If Mora did not see Rosado exchange anything, Heyden lacked sufficient suspicion under the collective knowledge doctrine to stop Rosado. Nor would either Mora or Heyden be entitled to qualified immunity, as it was clearly established at the time of the stop that fabrications cannot provide the requisite suspicion to detain a suspect. *Lewis* v. *City of Chicago*, 914 F.3d 472 (7th Cir. 2019) ("It has been clear since at least *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674 . . . (1978), that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment.").

Finally, if Heyden's *Terry* stop violated the Fourth Amendment, so did his search of Rosado's person. *See, e.g.*, *United States* v. *Lopez*, 907 F.3d 472, 486 (7th Cir. 2018) ("[S]ince the stop was improper, the frisk was too."). Similarly, if the jury accepts Rosado's account, Mora did not see Rosado transact drugs, Heyden did not recover illegal drugs from Rosado, and there was thus no basis to search the van without a warrant. *See, e.g.*, *United States* v. *Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015) ("A warrantless search of a vehicle is constitutionally permissible if police have probable cause to believe the vehicle contains contraband or other evidence of illegal activity."). Summary judgment must therefore be denied as to Count III.[5]

---

[5] Apacible and Mora are not defendants to Count III. (Dkt. 78.)

The defendants argue that even if Rosado could prove a Fourth Amendment violation, Korhonen, Delcid, and Apacible would not be liable. But on Rosado's account, Korhonen and Delcid recovered drugs from Soliveras and schemed with Heyden to pretend the drugs were Rosado's. If a jury credits Rosado's theory, it could find that Korhonen and Delcid either participated in Rosado's arrest (by giving over the drugs for which Heyden would later arrest Rosado) or failed to disclose that the drugs were Soliveras's in reckless disregard of Rosado's rights.

Apacible, however, is entitled to summary judgment because there is no genuine dispute that he neither observed the alleged drug transaction nor participated in seizing Rosado. Rosado attempts to hold Apacible liable on a failure-to-intervene theory. Rosado must show that Apacible had a "realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights . . . ." *Miller* v. *Smith*, 220 F.3d 491, 495 (7th Cir. 2000). He does not present any such evidence. At most, Apacible was present for Rosado's interrogation, but Rosado presents no evidence that Apacible knew that Rosado did not possess drugs.

On Count I, summary judgment is granted as to Apacible and denied as to all other officers. On Count III, summary judgment is denied.

## II. Post-Charging Detention (Count II)

In Count II, Rosado alleges that his post-charging detention was unlawful under *Manuel* v. *City of Joliet*, 137 S. Ct. 911, 197 L. Ed. 2d 312 (2017), which holds that the Fourth Amendment governs claims of illegal pretrial detentions even after the start of legal process. Under *Manuel*, a pretrial detention—just like an officer's decision to seize a suspect—violates the Fourth Amendment if it is not supported by probable cause.

Here, too, a genuine dispute of material fact precludes summary judgment. Heyden testified that he seized cocaine and marijuana from Rosado's pocket, which would constitute probable cause that Rosado possessed illegal drugs. *D.C.* v. *Wesby*, — U.S. —, 138 S. Ct. 577, 586 (2018). But Rosado testified that he did not have drugs, Heyden seized nothing, and despite knowing that the drugs, if any, were Soliveras's, the officers arrested and prosecuted Rosado. Because fabricated charges lack probable cause, if a jury credits Rosado's account, it could find in his favor. *See, e.g.*, *Lewis*, 914 F.3d at 477 (holding detention based on falsified evidence violates Fourth Amendment). And because on Rosado's account, Korhonen and Delcid knew that Soliveras, not Rosado, possessed the cocaine and marijuana, their active participation or failure to come forward contributed to Rosado's illegal detention. *Miller*, 220 F.3d at 495.

Again, however, Rosado provides no evidence that Apacible was involved in any way. Summary judgment is therefore denied on Count II to all officers except Apacible, as to whom it is granted.

## IV. Due Process (Count IV)

After *Manuel*, a claim that Rosado was detained based on police fabrications sounds in the Fourth Amendment. Count IV therefore alleges the same injury as Count II using a legal theory that the Supreme Court rejected. *See Lewis*, 914 F.3d at 476 ("The Court jettisoned the . . . due-process source of the right, instead grounding the claim in long-established Fourth Amendment doctrine . . . ."). Rosado does not reckon with *Lewis*. Instead, he returns to an argument this court rejected earlier in the case, that Mora's failure to disclose that he was lying violated *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). (*See* dkt. 70 at 2–3.) *Brady* requires prosecutors to disclose material, exculpatory evidence but "does not extend so far as to

provide relief in a situation where a police officer makes a false statement to a prosecutor." *Carvajal* v. *Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008).

Because Rosado cannot show any due process violation, summary judgment is granted to all defendants on Count IV.

## V. Malicious Prosecution

To prove malicious prosecution, Rosado must show: "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Martinez* v. *City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (quoting *Sneed* v. *Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998)). "The Illinois Supreme Court has held that 'a *nolle prosequi* dismissal terminates a proceeding in favor of the accused 'unless the abandonment is for reasons not indicative of the innocence of the accused.'" *Gardunio* v. *Town of Cicero*, 674 F. Supp. 2d 976, 987 (N.D. Ill. 2009) (quoting *Logan* v. *Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001)). "[T]he particular circumstances of each case must be considered to determine whether the dismissal following suppression of evidence should be considered indicative of innocence." *Dobiecki* v. *Palacios*, 829 F. Supp. 229, 235 (N.D. Ill. 1993) (citation omitted).

The officers argue that the proceedings were not terminated in a manner indicating Rosado's innocence. There is no dispute that the supervised-release revocation proceeding was terminated because the state could not meet its burden of proof, a termination in Rosado's favor. (Dkt. 116 ¶ 23.) The criminal prosecution is a closer call, as it was dismissed *nolle prosequi*—the prosecutor voluntarily abandoned it. (Dkt. 86 ¶¶ 51–55.) Courts have repeatedly found that dismissal *nolle prosequi* does not indicate innocence when it follows suppression of evidence for

reasons unrelated to reliability—especially prophylactic rules like *Miranda* v. *Arizona* and the Fourth Amendment's exclusionary rule. *Id.* at 236 (holding *nolle prosequi* not indicative of innocence where defendant's confession suppressed for *Miranda* violation); *Booker* v. *Ward*, 888 F. Supp. 869, 877 (N.D. Ill. 1995) (holding *nolle prosequi* not indicative of innocence where defendant's confession suppressed under Fourth Amendment exclusionary rule). As in *Dobiecki* and *Booker*, the trial court here did not exclude the drugs because it believed Rosado never possessed them. Rather, the court excluded the drugs because, in its view, the officers lacked the suspicion needed to justify the search that uncovered the drugs. Because the dismissal was not indicative of innocence, Rosado cannot prove malicious prosecution on the criminal charges.

Finally, defendants argue that Korhonen, Delcid, and Apacible did not "commence or continue" any prosecution—essentially, they argue that they did not proximately cause Rosado's prosecution. *See Beaman* v. *Freesmeyer*, — N.E.3d —, 2019 IL 122654 ¶ 33 ("[T]he relevant inquiry is whether the officer proximately caused the commencement or continuance of the criminal proceeding."). As discussed above, in Rosado's theory of events, Korhonen and Delcid assisted Heyden in pretending that Soliveras's drugs were Rosado's. They therefore participated in the chain of events that led to Rosado's revocation proceedings and detention in the Illinois Department of Corrections. And as above, Apacible is not liable.

Summary judgment is granted to Apacible. As to the other defendants, summary judgment is granted as to the criminal prosecution but denied as to the supervised-release revocation.

## VI. Conspiracy

For the reasons discussed above, summary judgment is denied on Count VI to all officers except Apacible, as to whom it is granted.

## VII. Indemnity

Defendants argue that the City is not liable for indemnity only because the officers are not liable. Because the officers may be liable, the City is not entitled to summary judgment on indemnity.

**ORDER**

The motion for summary judgment (dkt. 85) is granted as to Apacible. As to all other defendants, the motion is granted on Count IV, granted in part on Count V as described above, and denied as to all other counts.

Date: September 17, 2019

_____
U.S. District Judge Joan H. Lefkow